UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

| | | |
|---|---|---|
| **DONNA OEHLER** | : | Case No.: _____ |
| 1013 Westchester Way | : | |
| Cincinnati, OH, 45244 | : | Judge _____ |
| Plaintiff, | : | |
| v. | : | |
| **ECLIPSE SENIOR LIVING, INC.** | : | **PLAINTIFF'S COMPLAINT** |
| 5885 Meadows Road, Suite 500 | : | **WITH JURY DEMAND** |
| Lake Oswego, OR 97035 | : | **ENDORSED HEREON** |
| Serve on: | : | |
| **REGISTERED AGENT SOLUTIONS, INC.** | : | |
| 828 Lane Allen Rd. | : | |
| Suite 219 | : | |
| Lexington, KY  40504 | : | |
| Defendant. | : | |

## PARTIES

1. Plaintiff Donna Oehler is a resident and citizen of the state of Ohio.

2. Defendant Eclipse Senior Living, Inc. is incorporated in Delaware and has its principal place of business located in Oregon.

3. Defendant is an employer within meaning of federal and Kentucky law and is registered to conduct business within the Commonwealth of Kentucky.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds the jurisdictional minimum.

5. This Court has personal jurisdiction over Defendant in this matter because Defendant is registered to conduct business in the Commonwealth of Kentucky.

6. Plaintiff filed a timely charge of discrimination with the EEOC.

**7.** Venue is proper in this Division and District because Plaintiff was employed in this Division and District in Florence, Kentucky and a substantial part of the events giving rise to Plaintiff's claims occurred in this Division and District.

## FACTUAL ALLEGATIONS

8. Plaintiff was born in 1957 and was 64 years old at the time of her termination from Defendant.

9. She was recruited by Defendant for the Community Relations Director position which she began on or about December 28, 2011. Plaintiff worked at Elmcroft of Florence, an assisted living community located in Florence, Kentucky.

10. Defendant is a national manager of senior assisted living facilities including several under its Elmcroft brand such as the facility where Plaintiff worked. Defendant owned approximately 107 Elmcroft locations coast to coast.

11. Throughout her employment Plaintiff was a loyal and dedicated employee who received favorable performance reviews and earned multiple pay increases because of her performance.

12. In August 2018, Plaintiff earned a promotion to Executive Director of Elmcroft of Florence.

13. Plaintiff's most recent performance review in March 2021 indicated that she was meeting or exceeding the performance expectations for the job, and she was awarded a bonus for

2

her good performance. Her direct supervisor Regional Operations Director Shay Lingerfelt praised Plaintiff for her community's strong metrics and high resident satisfaction scores.

14. Under Plaintiff's leadership, Elmcroft of Florence avoided Covid outbreaks that impacted many of the other assisted living communities in the region. The facility only had 4 residents test positive for Covid and only because a resident contracted Covid while outside of the community for a surgical procedure.

15. At 64 years old Plaintiff was the oldest Executive Director in the region. Many other older Executive Directors employed by Defendant left the company either voluntarily or involuntarily within the last couple of years.

16. In May 2021, Plaintiff requested permission from the Area HR Director Kari Vaughn and Mr. Lingerfelt to terminate the Memory Care Director Koreana Manley. Plaintiff presented to them a timeline of performance and safety issues and indicated that she had documentation to support the concerns including written coaching.

17. Ms. Vaughn requested to see the documentation related to the performance and safety concerns with Ms. Manley. Plaintiff provided the documentation and detailed the history establishing that Ms. Manley had demonstrated a lack of caring and that termination was appropriate.

18. Plaintiff waited for HR approval to terminate Ms. Manley, but Ms. Vaughn never responded after Plaintiff provided the documentation requested.

19. On Sunday July 11, 2021, an incident of suspected elder abuse occurred in the memory care unit. A Resident Assistant (RA) threw water in the face of a memory impaired resident who resided in the Alzheimer's/dementia wing in the community.

20. Additionally, while Plaintiff was on vacation between June 23 and July 5, Ms. Manley purchased squirt guns for the staff and instructed them to squirt memory impaired residents to correct behavior. This was a form of abuse and not a practice used to redirect residents.

21. Plaintiff did not learn of these incidents until July 13. Upon learning of the suspected elder abuse, Plaintiff immediately suspended the offending employees pending an investigation. She also immediately notified her supervisor Mr. Lingerfelt who instructed Plaintiff to hold off on contacting Adult Protective Services (APS). Defendant's instruction to Plaintiff to hold off on reporting was a violation of KRS 209.030, part of the Kentucky Adult Protection which requires that a report "shall be made immediately" if there is "reasonable cause to suspect that an adult has suffered abuse. . . . "

22. Plaintiff again requested permission to fire Ms. Manley.

23. Plaintiff was instructed to await further instruction before contacting the authorities. Further, Ms. Vaughn would not let Plaintiff fire Manley because she had not been placed on a PIP.

24. Plaintiff responded by reminding Vaughn that she had provided documentation in May to support termination but Vaughn never responded. Plaintiff reminded Vaughn that the Director gave the order to use water guns, that it was elder abuse, that it violated the law, the resident's rights, was not tolerated by Elmcroft and that it was a terminable offense.

25. Finally on July 16, after a conference call with corporate, Plaintiff was given approval to report the incidents to APS and the Florence Police Department. She was also given approval to fire Ms. Manley.

26. Plaintiff was also provided a script written and approved by Defendant to follow when she called the families of the residents involved. She was specifically instructed to follow the script and not to inform the son of the resident who had water thrown in her face about that incident.

27. On July 19, Plaintiff was not feeling well but she took her temperature and was not running a fever. She reported for work and gave herself a Covid test which came back negative. On a conference call later that day with Mr. Lingerfelt it was discussed that she was not feeling well, and she was asked about whether she had passed Covid screening.

28. Plaintiff explained that Elmcroft of Florence had not been conducting entry screenings of employees since Mid-May based upon a written communication from corporate that "[W]e are no longer conducting proactive screening testing for communities in counties with > 10% positivity test rates unless it remains a requirement by the state or local public health departments."

29. On July 20, Plaintiff met with the resident's son and Mr. Lingerfelt participated by phone. During this meeting the son requested a copy of an incident report involving his mother. Lingerfelt after initially claiming that it was an internal document gave approval for Plaintiff to email a copy to the son. Plaintiff and the resident's son both heard Lingerfelt give permission to Plaintiff to provide a copy.

30. On July 25, Plaintiff was informed that she was being suspended, allegedly for stopping the screening of associates and because she provided a copy of the incident report to the resident's son.

31. Plaintiff explained that she only stopped the screening after receiving communication to do so and that Mr. Lingerfelt had given approval to release the incident report.

32. Despite this, Defendant terminated Plaintiff's employment on July 28, 2021.

33. Upon information and belief, Defendant engages in pattern and practice of age discrimination.

## COUNT I

### (WRONGFUL TERMINATION IN VIOLATION OF KENTUCKY PUBLIC POLICY)

34. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

35. The Commonwealth of Kentucky recognizes an important public interest in preventing adult abuse, neglect, and exploitation. The legislature enacted the Kentucky Adult Protection Act (APA) to statutorily protect this important public interest.

36. Plaintiff engaged in protected activity when she informed Defendant of suspected elder abuse and advised Defendant that Elmcroft was required to immediately report the abuse.

37. Defendant violated KRS 209.030 by instructing Plaintiff to hold off on making a report.

38. Plaintiff's protected activity was a substantial and motivating factor in terminating her employment.

39. But for Plaintiff's protected activity she would not have been discharged.

40. As a direct and proximate result of Plaintiff's wrongful termination in violation of Kentucky public policy she has suffered damages and is entitled to recovery.

## COUNT II
### AGE DISCRIMINATION
### (Kentucky Civil Rights Act, KRS 344.040)

41. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

42. Plaintiff was 64 years old at the time of her termination.

43. She was fully qualified for her position as Executive Director of Elmcroft of Florence.

44. Defendant unlawfully discriminated against Plaintiff and terminated her because of her age in violation of Kentucky law.

45. As a direct and proximate result of Plaintiff's unlawful termination she has suffered damages and entitled to recovery.

**WHEREFORE**, Plaintiff demands judgement against Defendant as follows:

a) That Defendant be enjoined from further unlawful conduct as described herein;

b) That Plaintiff be reinstated effective July 28, 2021, or in the alternative be awarded front pay;

c) That Plaintiff be awarded all lost earnings and benefits;

d) That Plaintiff be awarded compensatory damages including emotional distress;

e) That Plaintiff be awarded liquidated damages;

f) That Plaintiff be awarded punitive damages;

g) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than her compensation over several, separate tax years;

h) That Plaintiff be awarded prejudgment interest;

i) That Plaintiff be awarded attorneys' fees and costs; and

j) That Plaintiff be awarded all other legal and equitable relief to which she may entitled.

Respectfully Submitted,

*/s/ Kelly Mulloy Myers*
Kelly Mulloy Myers (KY Bar #83452)
George M. Reul, Jr. Seeking *Pro Hac Vice* Admission (OH Bar No. 0069992)
Trial Attorneys for Plaintiff
Freking Myers & Reul LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio  45202
Phone:  (513) 721-1975
Fax:  (513) 651-2570
*kmyers@fmr.law*
*greul@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Kelly Mulloy Myers*